David A. Randall (SBN 156722)
dave@orbitip.com
**ORBIT IP, LLP**
11400 W. Olympic Blvd., Suite 200
Los Angeles, CA 90064
Tel.: (310) 887-1333
Fax: (310) 887-1334

Ehab M. Samuel (SBN 228296)
esamuel@orbitip.com
**ORBIT IP, LLP**
620 Newport Center Drive, Suite 1100
Newport Beach, CA 92660
Tel.: (310) 887-1333
Fax: (310) 887-1334

*Attorneys for Plaintiff,*
*Perceptix Technologies LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PERCEPTIX TECHNOLOGIES LLC, a California limited liability company,

Plaintiff,

vs.

META PLATFORMS, INC., a Delaware corporation,

Defendant.

**Case No.:** 8:25-cv-1404

**COMPLAINT FOR PATENT INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

Plaintiff Perceptix Technologies LLC ("Perceptix" or "Plaintiff"), by way of this Complaint against Metal Platforms, Inc. ("Meta" or "Defendant"), alleges as follows:

## NATURE OF THE CASE

1. Perceptix brings this action against Meta for direct and indirect infringement of U.S. Patent No. 8,498,439 ("the '439 Patent"), a copy of which is shown in **Exhibit A**. Meta has infringed and is infringing the '439 Patent by, *inter alia*, making, using, selling, and offering to sell in the United States, and importing into the United States, the Meta Headsets described in Paragraph 25 below that exploit the inventions claimed in the '439 Patent.

2. This action arises under the Patent Laws of the United States, 35 U.S.C. §1, et seq., and seeks damages and other relief under 35 U.S.C. § 281, et seq. This action is necessary to stop Meta from illegally exploiting Perceptix's patent rights without its authorization and to recover for the harm Meta has caused Perceptix and its predecessor in interest.

## THE PARTIES

3. Perceptix is a California limited liability company with its principal place of business at 26522 La Alameda Ave., Suite 360, Mission Viejo, CA 92691.

4. Meta is a Delaware corporation with a number of offices throughout Northern and Southern California, including in this judicial district. Meta's principal place of business is located in Menlo Park, California.

**JURISDICTION AND VENUE**

5. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 et seq. This Court has subject matter jurisdiction over this action pursuant to at least 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Meta because Meta is a corporation that maintains its principal place of business in the State of California and thus is a resident of California. In addition to its principal place of business, based on information and belief, Meta maintains offices and directs business activities from a number of offices within the state of California, including offices in Orange County and Los Angeles County within this judicial district.

7. Meta is subject to this Court's general and specific personal jurisdiction because Meta has sufficient minimum contacts within the State of California, pursuant to due process and/or the California Long Arm Statute, because Meta has purposefully availed itself of the privileges of conducting business in the State of California, and this judicial district, and because Plaintiff's causes of action arise directly from Meta's business contacts and other activities within the State of California and this judicial district. Based on information and belief, Mata has marketed, sold, and used, and continues to market, sell, and use the infringing Meta Headsets throughout California, including in this judicial district.

8. Further, on information and belief, Meta has imported and continues to import the infringing Meta Headsets into this judicial district from outside the United States and has induced and continues to induce others to market, sell, and use

the infringing Meta Headsets throughout California, including within this judicial district.

9. Meta's business contacts and activities within California, and particularly this judicial district, in relation to the infringing Meta Headsets are extensive and go well beyond those discussed above.

10. For example, in 2014, Meta (then known as Facebook) acquired Oculus VR, Inc. ("Oculus"), which was headquartered in Irvine, California. On information and belief, Meta—through Oculus—developed, designed, manufactured, marketed, and sold accused Meta Headsets within this judicial district, including in Irvine, California.

11. On information and belief, Meta later reorganized Oculus under its Reality Labs division, which continues to focus on virtual and augmented reality technologies. Meta has a continuous and systematic presence in this judicial district through Reality Labs.

12. Meta's continued active presence in this judicial district in relation to the accused Meta Headsets is evidenced, for example, by its job postings. For example, Meta posted an opening for a "Software Engineer, Realtime Engine Technology – Reality Labs" position located in Los Angeles, California, accessible at https://www.metacareers.com/jobs/8077528815704669/. A screenshot of the posting is below.

Meta Jobs Teams Careers Programs Working at Meta Blog

Software Engineer, Realtime Engine Technology - Reality Labs

Los Angeles, CA • + 6 more • Full Time

Meta | AR/VR | 3D Software Engineering | Engineering

Apply to this job

13. The job description, which is copied below, outlines some of the core activities Meta conducts in this judicial district related to the accused Meta Headsets, including:

> At Meta, we're building innovative products that make it easier for people to connect with each other and enjoy immersive experiences. Our team of world-class experts is developing and shipping products at the intersection of hardware, software, and content, pushing the future of computing platforms and redefining the way people work, play, and connect. As a Realtime Engine Technology engineer, you'll play a key role in designing and developing real-time interactive software that powers our immersive experiences, enabling seamless and intuitive interactions between users and virtual environments. By joining our team, you'll be at the heart of change and the frontier of what's to come, helping to define the metaverse and shape the future of technology.

14. The job responsibilities further confirm Meta's purposeful direction of activities toward this judicial district:

- Develop efficient and reusable systems that drive complex real-time interactive software

- Build technologies that empower developers to create compelling experiences
- Optimize and debug real-time systems to ensure smooth performance
- Set a high quality bar to make our technology easy and delightful for developers to use
- Engage in depth collaboration with partner teams to drive successful product outcomes

15. Another example of a job posting related to the accused Meta Headsets in Los Angeles is titled "Technical Program Manager, VR Operating Systems" and is accessible at https://www.metacareers.com/jobs/538574155436693/. A screenshot of the posting is provided below.

Meta Jobs Teams Careers Programs Working at Meta Blog

Technical Program Manager, VR Operating Systems

Sunnyvale, CA • Los Angeles, CA • Bellevue, WA • Seattle, WA • Burlingame, CA • New York, NY • Full Time
- Hide

Meta Quest AR/VR Program Management

Apply to this job

16. The job description, which is copied below, further confirms that personnel in Meta's Reality Labs offices in Los Angeles are actively engaged in "multiple teams spanning technologies across operating systems, connectivity

protocols, firmware development, and manufacturing and testing of consumer electronics (Software and hardware)" for the accused Meta Headset products.

> Are you looking to shape the future of computing? Meta's Reality Labs is bringing together cutting-edge research and engineering to deliver products and experiences for the future of immersive computing and connecting humans with entertainment, information, and each other. Facebook Reality Labs is building software for all realities - Augmented or Virtual for billions of users across the globe. Our team is expanding and we're looking for experienced Technical Program Managers who will play a key role in defining and driving highly complex, cross-functional features. This role will have the opportunity to work closely with world-class development teams and leaders across the organization to deliver trustworthy experiences into Meta products (such as Oculus, Portal, Ray ban Wayfarer, etc.) **There are openings on multiple teams spanning technologies across operating systems, connectivity protocols, firmware development, and manufacturing and testing of consumer electronics (Software and hardware) to create experiences that engage billions of people.**

(Emphasis added.)

17. In view of the foregoing, the exercise of jurisdiction over Meta would not offend traditional notions of fair play and substantial justice.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) because (i) Meta resides in this judicial district for venue purposes, and (ii) on information and belief, Meta has committed acts of patent infringement in this judicial district and has a regular and established places of business in this judicial district, including at its Reality Labs office in this judicial district.

## FACTUAL BACKGROUND

19. The ’439 Patent was duly and legally issued to the Electronics and Telecommunications Research Institute (“ETRI”) by the United States Patent and Trademark Office on July 30, 2013, and is entitled “Headset for User Specific Audio Service and Method for User Specific Audio Service Using the Same.” The ’439 Patent is based on a PCT Patent Application that was filed on December 12, 2007, and that claims priority to an earlier Korean Patent Application No. KR10-2007-0072913, filed on July 20, 2007. Plaintiff Perceptix is the exclusive licensee of the ’439 Patent. A true and correct copy of the ’439 Patent is attached as **Exhibit A**.

20. The ’439 Patent was invented by ETRI inventors Dr. Chang Seok Bae and Dr. Jong Ho Won. ETRI is the national leader in Korea in the research and development of information technologies. Since its inception in 1976, ETRI has developed new technologies in DRAM computer memory, CDMA and 4G LTE cellular phone communications, large-scale computer storage, LCD / touchscreen display technology, and computers and headset devices. which is the technology at issue in this case.

21. ETRI employs over 2,000 research/technical staff, of whom over 90% hold a post-graduate degree and about 50% have earned a doctoral degree in their technological field. Over the last five years, ETRI has applied for a total of about 17,000 patents, has contributed to over 8,000 proposals that have been adopted by international and domestic standard organizations, and has published over 1,200 articles in peer-reviewed technology publications.

22. ETRI's leadership in patented new and innovative technologies has also been demonstrated by ETRI's multi-year No. 1 ranking among Top Local Innovation Systems, as ranked by IpIQ's *Innovation Anchor Scorecard*. ETRI was ranked above Massachusetts Institute of Technology ("MIT") (No. 2), University of California (No. 3), and Stanford (No. 4), as well as the U.S. Department of Energy (No. 5) and California Institute of Technology (No. 8).

23. Among other innovations, the '439 Patent describes and, as reflected in independent claim 1, claims a unique and innovative headset that includes (1) a sensing unit sensing whether or not the headset is put on, (2) an information collecting unit determining whether or not the headset is put on by the sensing unit and collecting current situation information of a user when the headset is put on, and (3) an information processing unit generating a user profile based on the current situation information of the user, and (4) controlling an audio signal output of a digital audio device based on the generated user profile.

24. The '439 Patent further describes and, as reflected in independent claim 11, claims a unique and innovative headset that includes (1) a sensing unit sensing whether or not the headset is put on, (2) an information collecting unit determining whether or not the headset is put on by the sensing unit and collecting current situation information of a user when the headset is put on, and (3) an information processing unit generating a user profile based on the current situation information of the user, (4) the current situation information including information about the user's surroundings, and (5) controlling an audio signal output of a digital audio device based on the generated user profile.

25. Meta, and its predecessor in interest Oculus, has infringed and is infringing the ’439 Patent by making, using, selling, and/or offering to sell in the United States, and/or importing into the United States, headsets that infringe one or more claims of the ’439 patent. For example, as shown in the claim chart attached as **Exhibit B**, at least Meta’s Meta Quest (also referred to as Oculus Quest), Meta Quest 2 (also referred to as the Oculus Quest 2), Meta Quest 3, Meta Quest 3S, and Meta Quest Pro headsets—as well as any other headsets made, used, sold, offered for sale, and/or imported by Meta having substantially the same construction and features as the aforementioned Meta headsets—(collectively referred to herein as “Meta Headsets”) infringe at least Claims 1 and 11 of the ’439 Patent.

26. As reflected in **Exhibit B**, the inventions described and claimed in the ’439 Patent go to the core of how the Meta Headsets operate and, indeed, the Meta Headsets would not exist without exploiting the inventions described and claimed in the ’439 Patent.

27. Through its exploitation of the advantages and features of the inventions claimed in the ’439 Patent, Meta has made over $10 billion dollars in sales of the infringing Meta Headsets since the launch of the Meta Headsets in May of 2019.

28. In addition to the substantial sales from the accused Meta Headsets, Meta has also reaped substantial revenue from other sources as a direct result of its infringement of the ’439 Patent. For example, based on information and belief, Meta has used the Meta Headsets to drive additional consumers to the Facebook App, and thus derive revenue from those consumers via ads. Meta did this, *inter*

*alia*, by requiring all end users of the Meta Headsets to have a Facebook account. On information and belief, in August of 2020, Meta announced a policy that required all users to have a Facebook account in order to be able to access their Meta Headsets and related services and prohibited standalone Meta Headsets account registration in October 2020. Further, on information and belief all Meta Headsets hardware (beginning with Quest 2) only supported Facebook accounts, and support for existing standalone Meta Headsets accounts on already-released Meta Headsets ended on January 1, 2023.

29. On information and belief, Facebook / Meta stated that the foregoing actions were necessary to facilitate "more Facebook powered multiplayer and social experiences" and make it "easier to share across our platforms." On further information and belief, in June 2021, Facebook announced it would begin targeted advertisements in applications for Meta Headsets and has continued targeted advertisements since that time directed to users of Meta Headsets in at least the required Facebook App and in applications for the Meta Headsets.

30. On information and belief, Meta's advertising revenue primarily comes from its social media platforms, including Facebook, Instagram, Messenger, and WhatsApp. In 2024, Meta reported approximately $115 billion in advertising revenue. This revenue is driven by targeted advertising based on user data, including demographics, interests, and behaviors. Thus, by forcing users of the Meta Headsets to have Facebook accounts and monitoring user data related to their Facebook account, as well as their use of the Meta Headsets, Meta has been able to deliver targeted advertising to a larger audience and more effectively target such users due

to the knowledge Meta gains from the users' use of the Meta Headsets, thereby increasing Meta's advertising revenue, both on Facebook, but also through the targeted ads delivered to apps for the Meta Headsets.

31. Further, on information and belief, the Meta Quest Store has generated over $2 billion in revenue since its launch in 2019. On further information and belief, the Meta Quest Store revenue consists of all the digital content sales and in-app transactions made through the Meta Quest platform, which serves as the official app and game marketplace for Meta Headsets. On information and belief, this revenue is primarily part of the company's Reality Labs segment.

32. On information and belief, Meta has also entered into revenue sharing agreements with various partners related to bundled products such as the Meta Quest 3S Xbox Edition, which includes a three-month Xbox Game Pass Ultimate subscription and a three-month Horizon + subscription. On information and belief, many purchasers of the Meta Quest 3S Xbox Edition have renewed their subscription to the Xbox Game Pass, and Meta is entitled to a share of the revenue from those renewed subscriptions.

**COUNT I**

**(Patent Infringement of the '439 Patent – 35 U.S.C. § 271*)***

33. The foregoing paragraphs are incorporated by reference as if fully set forth in this paragraph.

34. Plaintiff Perceptix is the exclusive licensee of the '439 Patent and owns the right to enforce the '439 Patent for causes of action arising thereunder, as well as those that have previously arisen thereunder, the right to pursue all remedies for

infringement of the '439 Patent, and the right to recover any and all available damages for infringement of the '439 Patent, including the right to sue for and recover past damages.

35. Meta has infringed and continues to infringe the '439 patent under at least 35 U.S.C. § 271, literally and under the doctrine of equivalents, by making, using, selling and/or offering for sale, in the United States, and/or importing into the United States, without authorization at least the Meta Headsets described above. A representative claim chart demonstrating how the Meta Headsets satisfy each limitation of at least claim 1 and/or claim 11 of the '439 Patent literally and/or under the doctrine of equivalents is attached as **Exhibit B**.

36. As reflected in **Exhibit B**, in relation to independent claims 1 and 11 of the '439 Patent, the infringing Meta Headsets are headsets for user specific audio services.

37. The Meta Headsets comprise a sensing unit sensing whether or not the headset is put on as recited in independent claims 1 and 11 of the '439 Patent.

38. The Meta Headsets further comprise an information collecting unit determining whether or not the headset is put on by the sensing unit and collecting current situation information of a user when the headset is put on as recited in independent claims 1 and 11 of the '439 Patent.

39. The Meta Headsets further comprise an information processing unit generating a user profile based on the current situation information of the user as recited in independent claim 1 of the '439 Patent.

40. The Meta Headsets further comprise an information processing unit generating a user profile based on the current situation information of the user, where the current situation information includes information about the user's surroundings as recited in independent claim 11 of the '439 Patent.

41. The information processing units of the Meta Headsets are configured to control an audio signal output of a digital audio device based on the generated user profile as recited in independent claims 1 and 11 of the '439 Patent.

42. While **Exhibit B** provides representative claim charts for independent claims1 and 11, Plaintiff Perceptix believes and on that basis alleges that Meta directly infringes additional claims of the '439 Patent.

43. In addition to directly infringing the claims of the '439 Patent, Meta indirectly infringes one or more claims of the '439 Patent. Meta's acts of indirect infringement include inducement of infringement and contributory infringement under 35 U.S.C. §§ 271(b) and (c).

44. Meta contributorily infringes the '439 Patent by offering to sell and selling within the United States and/or importing into the United States the Meta Headsets because (i) the Meta Headsets constitute a material part of the inventions claimed in the '439 patent, (ii) Meta knows the same to be especially made or especially adapted for use in an infringement of the '439 Patent, and (iii) the Meta Headsets are not a staple article or commodity of commerce suitable for substantial non-infringing use.

45. Meta also indirectly infringes the '439 Patent by, for example, inducing and encouraging others to infringe the '439 Patent. To that end, direct infringers of

the ’439 Patent include individuals and companies that make, import, use, sell, and/or offer to sell the Meta Headsets in the United States. In addition to end consumers, Meta customers that directly infringe the claims of the ’439 Patent include, for example, Best Buy, Amazon, Target, GameStop, Walmart, to name a few.

46. Meta’s acts of inducing infringement also include Meta’s routine support of end consumers use of the Meta Headsets, including providing routine software and firmware updates. On information and belief, the Meta Headsets run on a custom Android-based OS called Meta Quest OS. Meta actively maintains the Meta Headsets line through consistent software updates. On information and belief, such software updates include major system updates every 4-8 weeks that address functionality, security, and user experience. Further on information and belief, Meta often adds new functionality or enhancements through system updates such as:

- Hand tracking and gesture support
- Passthrough and mixed reality (MR) capabilities
- New user interface layouts and dashboard improvements
- Spatial audio enhancements

47. The Meta software and firmware updates are crucial to ensuring the long-term operability and compatibility of the Meta Headsets with evolving hardware and software ecosystems and thus such updates constitute acts of active inducement in violation of 35 U.S.C. § 271(b).

48. By way of example, Meta’s acts of inducing infringement further include selling the Meta Headsets to customers and users and/or offering those

customers and users access to the Meta Headsets and explicitly instructing those customers and users—through online materials, promotional materials, written instructions, user's guides, etc.—how to use the infringing Meta Headsets and/or in a manner that infringes the claims of the '439 Patent. This includes Meta's provision of web-based, phone-based, email-based, software-based, and/or literature-based promotion, support, and assistance (e.g., manuals, product guides, user forums, troubleshooting tips, and other forms of support and assistance) for utilizing the Meta Headsets.

49. Meta's acts of inducing infringement also include providing access through the Meta Quest Store to enhanced content, apps, and in app purchases, all of which further induce users to use its infringing Meta Headsets.

50. Moreover, on information and belief, Meta's acts of direct and/or indirect infringement of the '439 Patent have occurred with Meta's full knowledge of the '439 Patent, and also with Meta's full knowledge that the Meta Headsets—when manufactured and/or used as directed by Meta—directly infringe one or more claims of the '439 Patent. In short, Meta has been well and fully aware that the making, using, selling, offering for sale, and/or importing of the Meta Headsets—whether by Meta or on its behalf by others—constitutes direct infringement of one of more claims of the '439 Patent.

51. For example, prior to the filing of Plaintiff's Complaint in this action, Plaintiff provided on or about June 26, 2025, written notice to Meta regarding Meta's infringement of the '439 Patent. Meta thus received advance notice of the '439 Patent and the fact that the accused Meta Headsets infringed one or more

claims of the '439 Patent. Despite this explicit notice, Meta has continued to make, use, sell, offer for sale, and/or import into the United States the Meta Headsets. In addition, despite this knowledge, Meta has continued to engage in acts of indirect infringement as described above.

52. Upon information and belief, Meta has made and is continuing to make unlawful gains and profits from its infringement of the '439 Patent.

53. Defendant Meta's infringement has injured and continues to injure Plaintiff Perceptix, which is entitled to recover damages adequate to compensate it for the direct and indirect infringement, but in no event less than a reasonable royalty. Defendant Meta's infringement has caused monetary damages to Perceptix in an amount to be determined at trial.

54. Meta's direct and indirect infringement of the '439 Patent is willful.

55. On information and belief, Meta engaged in this conduct with knowledge of the '439 Patent's existence and with knowledge that the Meta Headsets infringed it, and that their customers' use of the Meta Headsets constituted direct infringement.

56. Defendant's actions in this case warrant the imposition of enhanced damages under 35 U.S.C. § 284. Moreover, because Defendant's acts of patent infringement have been and are now willful and intentional, this case is exceptional and Perceptix is thus also entitled to recover its attorneys' fees, as well as the costs of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Perceptix asks the Court to enter judgment in its favor and against Meta and grant the following relief:

A. A determination that Meta has infringed the ’439 Patent.

B. Awarding damages arising out of Meta’s infringement of the ’439 Patent to Plaintiff, together with prejudgment and post-judgment interest, in an amount according to proof.

C. As a consequence of Meta’s willful infringement, trebling the foregoing damages award in accordance with 35 U.S.C. § 284.

D. Awarding attorneys’ fees to Plaintiff pursuant to 35 U.S.C. § 285 or as otherwise permitted by law.

E. Any further relief that this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Perceptix demands a trial by jury of all issues and claims which are so triable.

DATED: June 30, 2025

Respectfully submitted,

ORBIT IP, LLP

By: /s/ *David A. Randall*
David A. Randall (CA SBN 156722)
Ehab M. Samuel (CA SBN 228296)

*Attorneys for Plaintiff,*
*Perceptix Technologies LLC.*